# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| VELESTA ROUSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:14-cv-01761 |
| ) | JUDGE CAMPBELL |
| ERIC K. FANNING, as Secretary, ) | |
| Department of the Army, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Before the Court is the Defendant's Motion for Summary Judgment (Doc. No. 55). For the reasons set forth herein, the motion will be granted and this action dismissed.

## I.   UNDISPUTED MATERIAL FACTS

The facts set forth herein are drawn directly from Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. No. 63), unless otherwise indicated.

### Background

Plaintiff was employed by the Department of the Army at the Fort Campbell, Kentucky, Civilian Personnel Advisory Center ("CPAC") as a Human Resources Assistant, GS 0203-07, from August 15, 2010 until June 18, 2011. From August 15, 2010 until February 27, 2011, Shanna Pinckney served as Plaintiff's first line supervisor. From February 28 until June 17, 2011, Kim Santiago served as Plaintiff's first line supervisor. Plaintiff was reassigned to Santiago in an effort to alleviate Plaintiff's concerns regarding Pinckney. Plaintiff's second level supervisor was Valencia Bratton, Human Resources Officer.

While working as a Human Resources Assistant, Plaintiff filed two charges with the Equal

Employment Opportunity ("EEO") office in Fort Campbell, Kentucky, the first in October 2010 and the second in March 2011. Plaintiff's October 2010 EEO charge alleged discrimination and a hostile work environment based on her race (African American), color (black), sex (female), and age (over 40). Plaintiff withdrew her October 2010 charge for personal reasons.

In her Amended Complaint in this Court, Plaintiff alleges that, after she withdrew the first EEO charge, she was "subjected to a hostile work environment and reprisal for her EEO complaint." (Compl. ¶ 11.) She alleges that she was "held to harsher standards" and denied opportunities that were afforded her colleagues who had not filed EEO charges. (*Id.*)

Plaintiff's second EEO charge again alleged discrimination based on color, sex, and age, and also alleged reprisal for prior protected activity arising from 14 events from December 2010 through March 2011. On August 7, 2012, a final agency decision issued from the Department of the Army finding that Plaintiff was not discriminated against on any basis set forth in her second EEO complaint. Plaintiff was notified of her appeal rights, but she did not file an appeal to the Equal Employment Opportunity Commission or file a timely civil action in the United States District Court.

Plaintiff alleges in her Amended Complaint in this Court that the retaliatory treatment related to her having filed her first and second EEO charges continued up until she left her position at the CPAC in June 2011. (Compl. ¶ 14.)

### The Farewell Luncheon

On June 18, 2011, Plaintiff voluntarily left her position as a Human Resources Assistant at CPAC and accepted a job with the U.S. Army Corps of Engineers in Nashville, Tennessee. Prior to Plaintiff's departure, Santiago planned a luncheon in the Plaintiff's honor. Farewell luncheons

traditionally were used to show appreciation for the contributions of outgoing CPAC employees. CPAC farewell luncheons are voluntary for the outgoing employee as well as the attendees. (*See* Doc. No. 56-4, Santiago Decl. at 3–5.)[1] Plaintiff initially indicated to Santiago that she did not want the fuss of a luncheon and wished to leave quietly. Santiago told the Plaintiff to think about it and, on June 13, 2011, emailed Plaintiff asking her where she wanted to go for her going-away luncheon. Plaintiff responded to Santiago's email by stating "if we must the Southern Buffet at Cole Park Commons would be ok. Thanks." (Santiago Decl. at 4.) On 13 June 2011, Santiago responded to the Plaintiff by stating "Yes we must and thanks!!" Plaintiff replied by telling Santiago: "Yes Ma'am. You are welcome and thank you." (Santiago Decl. at 3–4). After the June 13, 2011 email, the Plaintiff did not express any feelings to Santiago about the luncheon.

The luncheon was held on June 17, 2011. Plaintiff claims that Bratton warned her at the luncheon not to go to Nashville speaking badly of the CPAC office because she might wish to return to Fort Campbell. Another employee added, "yeah because we do the [personnel] actions." (Doc. No. 56-21, at 2.) However, the overall tenor of luncheon was positive, and Plaintiff admits she is the only attendee who recalls hearing any specific negative or derogatory comments.

### Non-Referral for GS-0301-09 Position

The position of Administrative Specialist, GS-0301-09, located at the Mission Support Element's Director's office at the headquarters of the 101st Airborne Division, Fort Campbell, Kentucky, was announced on April 18, 2012 and closed on April 25, 2012. Plaintiff applied for the position on April 25, 2012. Plaintiff was not among those candidates referred to the selecting official

---

[1] In her Response to Defendant's Statement of Undisputed Facts, Plaintiff denies this statement and asserts that she was "ordered" to attend the luncheon held in her honor. (Doc. No. 63, at ¶ 14.) However, she does not cite to any portion of the record in support of her assertion, as required by Rule 56(c) of the Federal Rules of Civil Procedure.

for the position.

Derrick Graves was the Human Resource specialist who rated the applicants and referred them to the selecting official. In June 2012, Plaintiff emailed Graves to inquire why she was not referred to the selecting official for the Administrative Specialist position. Graves responded that she did not meet a sufficient number of skills to be rated as best qualified on the referral list. (Doc. No. Doc. No. 56-10, Graves Decl. at 6; Doc. No. 56-17, email exchange between Graves and Plaintiff.)[2]

Neither Kim Santiago nor Valencia Bratton was involved in generating the referral list. They became involved after Plaintiff inquired why she was not referred. (Doc. No. 56-3, Bratton Decl. at 5–6; Doc. No. 56-4, Santiago Decl. at 7–8; Doc. No. 56-10, Graves Decl. at 5.) In her Response to Defendant's Statement of Undisputed Facts, Plaintiff states that she "believes that Mr. Graves was influenced by Ms. Santiago and Ms. Bratton." (Doc. No. 63, at ¶ 30.) Her belief is not substantiated by any citation to the record.

When Graves made her aware of Plaintiff's inquiry, Santiago directed a second quality review by senior HR Specialist Victoria Zimmerman, who determined that Graves had made an error in generating the referral list. (Santiago Decl. at 7–8; Doc. No. 56-9, Zimmerman Decl. at 5–6.) Graves committed the administrative error by referring the seven applicants who matched the required skills and one desired skill when he should have referred all twelve of the applicants for the position, as each had the required skills. (Graves Decl. at 5; Zimmerman Decl. at 6; Santiago Decl. at 7–8.)

In letters dated July 23, 2012, the Agency informed Plaintiff and four other applicants in

---

[2] In her Response to Defendant's Statement of Undisputed Facts, Plaintiff denies that she received Graves' email. (Doc. No. 63, at ¶ 29.) Again, her denial is not in compliance with Rule 56(c).

accordance with 5 C.F.R. § 335.103(c) that a review had been conducted and that they should have been referred but had not been due to an error in the rating process. (Doc. No. 56-18.) The letters further notified the candidates that each of them would have priority consideration for the next Administrative Support Specialist position announcement at Fort Campbell, Kentucky. (*Id.*) Rouse was the only one of the five non-referred candidates who had engaged in prior protected Title VII activity at Fort Campbell.

## Final EEO Complaint

On September 20, 2012, Plaintiff made initial contact with the EEO office at Fort Campbell about her non-referral for the GS-301-09 position. On September 28, 2012, Plaintiff filed her Formal Complaint of Discrimination, which is the underlying basis for the action in this Court. Her formal EEO charge cited reprisal as the only basis for her claim. In the EEO charge, Plaintiff complains generally about experiencing "constant denials of placements and advancements" because of her prior EEO activity (Doc. No. 56-21, at 1) and specifically identifies the following as retaliatory actions:

(1) Valencia Bratton or other prior supervisors caused her non-referral for the GS-0301-09 Administrative Specialist position in July 2012;

(2) she was "ordered" to attend the farewell luncheon held in her honor in June 2011 (*id.* at 2);

(3) Bratton commented at the farewell luncheon that Plaintiff should not "go to Nashville talking bad about [CPAC] because [she] may want a job back at Fort Campbell," and this comment was reinforced by Sara Barksdale, who added, "yeah because we do the actions" (*id.*);

(4) Bratton used her position to thwart Plaintiff's attempts to seek a promotion in November

or December 2010 when she applied for a developmental position within CPAC; and

(5) Bratton "continued to abuse her position" to influence Plaintiff's non-selection for several other promotions she sought during 2011, prior to Plaintiff's accepting the job in Nashville (*id.* at 3).

After the investigation ended, a Final Agency Decision (FAD) was issued on May 28, 2014, finding that Plaintiff was not a victim of retaliation and setting forth her appeal rights. Plaintiff thereafter filed suit in this Court on August 26, 2014.

**Subsequent Employment History**

On April 6, 2014, Plaintiff changed job series to a GS-0203-07 HR Assistant position with the Army in Kentucky. On April 20, 2014, Plaintiff changed job series to an Army GS-201-07 HR Specialist position with promotion potential to GS-11 in Kentucky. Plaintiff was promoted to GS-201-09 HR Specialist with the Army on March 22, 2015 in Kentucky. (Doc. No. 56-24.) She continues to serve in that position today.

**Admissions**

In Plaintiff's Response to Defendant's Request for Admissions, Plaintiff admitted that she is not alleging that age discrimination was the basis for her non-referral for the position she sought at Fort Campbell in 2012. (Doc. No. 56-25, at ¶¶ 13–16.)[3]

**II.    PROCEDURAL BACKGROUND**

Plaintiff Velesta Rouse filed this action in August 2014 and an Amended Complaint (Doc.

---

[3] Defendant's Statement of Undisputed Fact ¶ 42 states: "Plaintiff has admitted that she claims only retaliation and not age, race, or gender discrimination as her basis for challenging her non-referral for the Administrative Support Specialist position, GS-0301-09, in 2012." In support of this statement, Defendant cites to Plaintiff's Admissions, which are included as an exhibit to Defendant's motion. Plaintiff denies the statement now but without a citation to the record. (*See* Doc. No. 63, at ¶ 42.)

No. 29) in February 2013, asserting claims for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count One), violations of the Civil Rights Act of 1991, 42 U.S.C. § 1981 (Count Two), and violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count Three). In April 2015, the Court granted in part and denied in part Defendant's Motion to Dismiss, substantially narrowing the scope of Plaintiff's claims. Specifically, the Court dismissed the claims of discrimination and hostile work environment on the basis of race contained in Count One and dismissed Count Two entirely as duplicative of Count I. Plaintiff's requests for punitive damages and prejudgment interest were stricken. The Court, however, denied the motion to dismiss the claims in Count One for retaliation and retaliatory harassment based on the filing of EEO complaints and the ADEA claim in Count Three. (*See* Order, Doc. No. 39.)

Defendant now asserts that he is entitled to summary judgment on all remaining claims.

### III. STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (describing the issue as "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that on party must prevail as a matter of law" (internal quotation omitted)). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party

"must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006) (internal quotation omitted). In deciding whether summary judgment is appropriate, however, the Court must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255; *Clayton v. Meijer, Inc.*, 281 F.3d 605, 609 (6th Cir. 2010).

## IV. ANALYSIS

In his motion, Defendant argues that (1) Plaintiff failed to exhaust administrative remedies for her claims of age discrimination; (2) she cannot establish a *prima facie* case of retaliation; (3) her retaliatory harassment claim based on discrete events that occurred in 2010 and 2011 is barred by the failure to exhaust; and (4) as a matter of law, Plaintiff cannot establish that she was subject to harassment.

### A. Plaintiff's Failure to Support Factual Positions

As an initial matter, the Court notes that Rule 56(c) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." None of Plaintiff's denials of statements in Defendant's Statement of Undisputed Facts comply with Rule 56(c) because they do not include citations to the record.

Under Rule 56(e),

If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may:

    (1) give an opportunity to properly support or address the fact;

    (2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

The Advisory Committee Notes to Rule 56(e) recognize that the "choice among possible orders should be designed to encourage proper presentation of the record."

In this case, Defendant's factual assertions are fully supported by citations to the record and supporting documentation. Plaintiff attempts to refute only a few of those facts, but in each case, her denial is without any support at all or is based only on her own unsubstantiated belief, without reference even to Plaintiff's deposition testimony or an affidavit or declaration. In some cases, Plaintiff's denial is flatly refuted by the record, as when Plaintiff denies statements she admitted in response to Defendant's Request for Admissions. *See* Note 3, *supra*. Based on all these factors, the Court will consider the facts as set forth in Defendant's Statement of Undisputed Facts as undisputed for purposes of Defendant's motion.

### B. ADEA Claim

The Sixth Circuit has recognized that the ADEA does not explicitly require federal government employees to exhaust administrative remedies before bringing suit for age discrimination. *McKnight v. Gates*, 282 F. App'x 394, 397 (6th Cir. 2008). Rather, under 29 U.S.C. § 633a, a federal-employee claimant may either "invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies" or, "[a]lternatively, the employee has the option . . . to bypass the administrative process either in part or in its entirety." *Langford v. U.S. Army Corps of Eng'rs*, 839 F.2d 1192, 1194 (6th Cir. 1988) (citation omitted). Under the latter alternative, the employee "can decide to present the merits of his

claim to a federal court in the first instance." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991) (citing 29 U.S.C. § 633a(b) & (c)). If the plaintiff takes the latter route, however, the ADEA still requires formal notice to the EEOC prior to filing suit:

> When the individual has not filed a complaint concerning age discrimination with the Commission, *no civil action may be commenced* by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred.

29 U.S.C. § 633a(d) (emphasis). Failure to comply with either of the above-described procedures constitutes a failure to exhaust administrative remedies and bars an employee from bringing suit in federal court. *See McKnight*, 282 F. App'x at 398–99 (affirming dismissal of ADEA class claim for failure to exhaust or comply with notice requirement); *Anderson v. TVA*, No. 92-5811, 1993 WL 113730, at *6–8 (6th Cir. April 13, 1993) (affirming dismissal of ADEA claim where the plaintiff failed either to fully exhaust administrative remedies or provide notice of intent to file suit).

Specifically with regard to the alleged failures to promote in 2010 and 2011, Defendant argues that because they were discrete hiring actions, Plaintiff was required, with respect to each event, either to administratively exhaust her remedies in keeping with the Title VII procedure, which requires federal employees to contact an EEO counselor within 45 days of the event, *see* 29 C.F.R. § 1614.201, or to follow the ADEA "bypass procedure," which requires notice to the EEOC within 180 days of the act and then at least 30-days advance notice of intent to sue on those actions. (Doc. No. 56, at 12.) Defendant argues that when Plaintiff complained for the first time about the 2010 and 2011 hiring actions in her September 2012 EEO charge, both the 45-day limit for complying with the exhaustion procedure and the 180-day limit for following the notice procedure had long-since expired.

Plaintiff does not respond to this argument other than to posit that the Court "already ruled that Plaintiff's ADEA claim is timely" and that "the ADEA does not explicitly require a plaintiff to exhaust administrative remedies before bringing suit." (Doc. No. 62, at 4.) However, denying a motion to dismiss is not equivalent to ruling on a motion for summary judgment. Faced with a motion for summary judgment, Plaintiff must provide evidence that, at a minimum, creates a genuine factual dispute as to whether she complied with the statutory exhaustion or notice requirement. In the absence of such evidence, the ADEA claims based on the 2010 and 2011 hiring actions must be dismissed.

As for the 2012 non-referral, Defendant likewise argues that when Rouse chose not to file an administrative claim with the EEOC for discrimination based on age in connection with the 2012 non-referral, she effectively placed herself within the reach of § 633a(d). By failing to comply with that statute by providing notice to the EEOC within 180 days of the act she believes constituted age discrimination, she failed to exhaust her claims. Rouse filed her EEO complaint in September 2012 alleging only "reprisal" based on her non-referral in April 2012. This complaint was filed within 180 days of the action complained of, but it does not include notice of discrimination on the basis of age or constitute notice of intent to sue based on age discrimination. In other words, it conclusively appears that Rouse failed to comply with 29 U.S.C. § 633a with respect to her age discrimination claim based on the 2012 non-referral too, since she neither exhausted her administrative remedies nor filed notice of intent to file an ADEA lawsuit.

Moreover, it appears that Plaintiff has affirmatively waived any claim under the ADEA related to the 2012 non-referral. During discovery, Defendant requested an admission as follows: "Admit that you do not allege discrimination based on your age was the basis for your non-referral

to the position you sought at Fort Campbell in April 2012." (Doc. No. 56-25, Request for Admission No. 13.) Rouse responded: "Admit – I do not believe this complaint was age based. . . ."

Under Rule 56(c)(1)(A), admissions are among the types of documentary evidence on which a party may rely to support a statement of fact. Rule 36(b) states that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Plaintiff here has never sought to amend or withdraw her admission, and the Court finds it to be conclusively established that age was not the basis for Plaintiff's non-referral to the position she applied for in April 2012.

For all these reasons, Defendant is entitled to summary judgment on Plaintiff's ADEA claim.

### C. Retaliation Claim Based on July 2012 Non-Referral

Defendant identifies the discrete retaliatory events about which Plaintiff complains as including Bratton's allegedly using her influence to prevent Plaintiff from receiving several promotions between November 2010 and June 2011; the farewell luncheon in June 2010 during which Bratton allegedly warned her not to "go to Nashville talking bad about us because you may want a job back at Fort Campbell someday" (Am. Compl. ¶ 15), and another assistant added, "yeah, because we do the actions" (*id.*); and the non-referral for the position of Administrative Specialist, GS-0301-09 in July 2012. Plaintiff's response to Defendant's Motion for Summary Judgment, however, indicates that the only event on which Plaintiff relies as the basis for a substantive retaliation claim, as distinct from a retaliatory harassment claim, is the July 2012 non-referral to the position of Administrative Specialist, GS-0301-09. With respect to that event, Plaintiff contends that there is sufficient circumstantial evidence in the record to create a factual dispute as to each element of her *prima facie* case and that summary judgment is not appropriate.

The Court analyzes retaliation claims supported by circumstantial evidence under the same burden-shifting framework used to assess claims of discrimination. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), to a retaliation claim). Under this framework, the plaintiff has the initial burden to establish a *prima facie* case of retaliation by showing that (1) she engaged in protected activity; (2) the defendant knew of such activity; (3) the defendant took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action or harassment. *Id.; see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (holding that an adverse action for purposes of a retaliation claim does not have to be work-related). The Supreme Court has confirmed that the causation standard for Title VII retaliation claims is "but-for causation" rather than the lesser standard of "motivating cause" that applies to Title VII discrimination claims. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). This standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Defendant does not dispute that Plaintiff engaged in protected activity when she filed EEO complaints and that her supervisors had knowledge of that activity. The Court accepts for purposes of summary judgment that the non-referral was sufficiently adverse to support a retaliation claim. The question before the Court is whether there is sufficient evidence in the record from which a reasonable jury could find a causal connection between the protected adverse action.

Defendant has put forth undisputed evidence that the non-referral resulted from an administrative error by Human Resources Specialist Derrick Graves. The same error affected four

other applicants. All of them, including Plaintiff, received letters notifying them of the error and that they would be given priority consideration for the next administrative support specialist position. Graves confirmed that the non-referral resulted from his error alone. (*See* Doc. No. 56-10, Graves Decl. at 7 ("[T]he Complainant's non-referral was due to my misinterpretation of CHRA Guidance Memorandum No. 07-09 Appendix B for best qualified candidates . . . .").)

In the face of this undisputed evidence, Plaintiff points to three items of circumstantial evidence she claims are sufficient to permit a reasonable jury to draw an inference of causation. First, she argues that Shanna Pinckney told her, after she filed her first EEO charge in 2010, that she had "broken trust" and that she would need to work to regain that trust back. (Doc. No. 62, at 7.) Second, she claims that, during her farewell luncheon in 2011, Bratton warned her not to "go to Nashville talking bad about us because you may want a job back at Fort Campbell someday." (*Id.*) And third, "Plaintiff testified in her deposition that Mr. Derrick Graves, the Human Resources Specialist responsible for Plaintiff's non-referral, was in the room when Ms. Valencia Bratton, Human Resources Officer, told Plaintiff that '[she] would never get a job at Fort Campbell.'" (Doc. No. 62, at 7 (citing Doc. No. 56-6, at 2 (Pl.'s Dep. excerpts).) Plaintiff asserts that this evidence, "taken as true by the finder of fact, would be sufficient evidence from which one could draw an inference of retaliation." (Doc. No. 62, at 7.)

Notably, Plaintiff's references to the loss of trust and her deposition testimony are not included in her response to Defendant's Statement of Undisputed Facts, nor did Plaintiff submit her own statement of disputed facts in accordance with Local Rule 56.01(c). Regardless, the deposition testimony to which Plaintiff refers reads as follows:

Q. . . . Do you know any individual named Mr. Derrick Graves?

> A. Yes, ma'am.
>
> Q. You stated that he was influenced by USA Staffing Tool not to refer you for a position?
>
> A. He was influenced by Ms. Bratton. I—
>
> Q. And why do you believe that he was influenced by Ms. Bratton?
>
> A. I don't know why he would have been influenced, but Ms. Bratton made a comment, and I believe because she's hands-on she was able to influence him to not put me on the referral list.
>
> Q. Did you witness any conversation where Ms. Bratton told Mr. Graves not to put you on the list?
>
> A. No, ma'am, Mr. Graves was in the conference room when she told me that I would never get a job at Fort Campbell.
>
> . . . .
>
> Q. So you don't have any—any evidence that Ms. Bratton or anyone told Mr. Graves to not put you on a staffing pool, you don't have anything?
>
> A. No, no, I don't, no, ma'am.

(Doc. No. 56-6, at 2–3.)

The evidence to which Plaintiff points is not sufficient to carry her burden on summary judgment. In particular, regardless of whether Pinckney or Bratton might have had reason to retaliate against her, Plaintiff does not refute that Derrick Graves was the person who actually took the action about which she complains, and she cannot think of any reason why Graves would have been influenced by Bratton. Although Plaintiff alleges that Graves was in a conference room when Bratton told her she would never get a job at Fort Campbell, Plaintiff provides no context for that statement, such as when it occurred or why, what Graves was doing at the time, or whether he appeared to have been listening and overheard the statement. Consequently she has not provided enough information

-15-

to permit a reasonable jury to conclude that Graves actually overheard Bratton's statement. As a result, Plaintiff cannot show that Graves, in making an error that affected not only Plaintiff but four other candidates, was influenced by Bratton or anyone else. Moreover, Plaintiff has no evidence that Bratton or any of Plaintiff's other prior supervisors knew that she was applying for the position or had not been referred for consideration until Plaintiff sent an inquiry regarding why she had not been referred, at which time Graves' error came to light. (*See* Doc. No. 56-10, Graves Decl. at 4–7; Doc. No. 56-3, Bratton Decl. at 5–7; Doc. No. 56-4, Santiago Decl. at 7–10.)

In short, Plaintiff's belief that Graves' failure to refer her was influenced by Bratton and that Bratton exerted this influence for the purpose of retaliation is just that—unsubstantiated belief. Even viewed in the light most favorable to Plaintiff and drawing all permissible inferences in her favor, the circumstantial evidence is not sufficient to permit a reasonable jury to conclude that the non-referral was causally related to Plaintiff's protected activity. Defendant is therefore entitled to summary judgment on the retaliation claim based on the 2012 non-referral.

### D. Retaliatory Harassment

Defendant argues that Plaintiff cannot establish her retaliatory harassment claim because most of the events that she characterizes as harassing were instead discrete, identifiable acts that, standing alone, could potentially give rise to separate retaliation claims, and that Plaintiff was required to administratively exhaust her claims with respect to each of these events. Defendant also argues that the events about which Plaintiff complains are not sufficiently severe to support a retaliatory harassment claim. Defendant identifies the allegedly harassing events upon which Plaintiff's claim is premised as including (1) Bratton's allegedly using her influence to prevent Plaintiff from receiving several promotions between November 2010 and June 2011; (2) the farewell

luncheon in June 2011; and (3) Bratton's warning Plaintiff at the luncheon that she should not "go to Nashville talking bad about us because you may want a job back at Fort Campbell someday" (Am. Compl. ¶ 15), to which another employee added, "yeah, because we do the actions." (*Id.*)

In response, Plaintiff argues that the going-away luncheon and 2012 non-referral were "merely the culmination of a long line of severe and pervasive retaliatory harassment that Plaintiff faced after her initial EEO complaint in 2010." (Doc. No. 62, at 9.) Plaintiff also relies on the events detailed in her February 2011 EEO complaint, including supervisors' making mocking remarks, repeatedly denying Plaintiff opportunities and privileges that were afforded other non-protected employees, changing her workload, and engaging in other unspecified "continued harassment and retaliation" up until Plaintiff changed jobs in June 2011. (*Id.*)[4]

The Sixth Circuit has held that adverse actions that do not meet the *Burlington Northern* standard as "materially adverse actions" may still give rise to liability for retaliatory harassment or hostile environment under Title VII. *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 791 (6th Cir. 2000). That is, a plaintiff seeking to demonstrate a *prima facie* case of retaliatory harassment must prove that: (1) she engaged in an activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and harassment. *Id.* Retaliation claims, by contrast, are marked by materially adverse actions rather than repeated harassment. *See id.* (distinguishing between retaliation, marked by adverse action, and retaliatory

---

[4] The 2011 EEO charge is attached as an exhibit to Plaintiff's Response to the motion for summary judgment. In that charge, Plaintiff complains specifically about an event that took place on February 9, 2011, when Shanna Pinckney, her supervisor at the time, refused to allow her to go home early despite an impending snow storm. Plaintiff claims she was "mocked and humiliated" by Pinckney for requesting to leave early. (Doc. No. 62-1, at 1.) The EEO charge refers to an "attached list of other events of reprisal," but no such list is attached to the exhibit provided to the Court.

harassment, marked by "severe or pervasive" behavior).

Here, Defendant argues that any claims that predate the 2012 non-referral are barred by failure to exhaust and, as a result, time-barred, and that Plaintiff cannot rely on the continuing-violations theory to save the claims. In that regard, 29 C.F.R. §1614.105(a)(1) plainly requires federal employees who believe they have been discriminated against in violation of Title VII to contact an EEO counselor within forty-five days of an alleged discriminatory action or personnel matter. While there is no dispute that Plaintiff complied with the exhaustion requirement for purposes of her reprisal/retaliation claim based on the non-referral that occurred in July 2012, the question is whether Plaintiff timely exhausted her claims related to the events that took place toward the end of 2010 and during the first half of 2011.

Plaintiff appears to rely on the continuing-violations theory to save her retaliatory harassment claim. Under that theory, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). As the Sixth Circuit has recognized, however, the Supreme Court "largely curtailed the continuing-violations theory when applied to 'discrete discriminatory acts.'" *Austion v. City of Clarksville*, 244 F. App'x 639, 647 (6th Cir. 2007) (citing *Morgan*, 536 U.S. at 113). Specifically, the *Morgan* Court reversed the Ninth Circuit's application of the continuing-violations theory to what it called "serial violations":

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." [Plaintiff] can only file a charge to cover discrete acts that "occurred"

> within the appropriate time period. While [Plaintiff] alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable.

*Morgan*, 536 U.S. at 114. While the *Morgan* Court clearly delineated the scope of the continuing violations theory and the circumstances under which it applies, the Court ultimately held that the "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period." *Id.* at 122.[5]

The events about which Plaintiff complains with any specificity are all discrete events. These include the failure to promote in November or December 2010, other failures to promote during the first half of 2011, and the going-away luncheon in June 2011. Because these were discrete events, Plaintiff was required to exhaust her administrative remedies with respect to each; she cannot rely on a continuing violations theory to extend the limitations period for exhausting her remedies. *See Morgan*, 536 U.S. at 105 ("We hold that the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period."). As a result, retaliation claims based on those events are now barred by the failure to exhaust them within the statutory limitations period.

Finally, Plaintiff may be attempting to argue that she was subject to other harassing behavior that took place in 2011 and that those events, considered in conjunction with the June 2011 luncheon and the July 2012 non-referral to make a claim for retaliatory harassment, are not barred by the statute of limitations. The Court finds that Plaintiff simply fails to create a material factual dispute

---

[5] The Sixth Circuit has "recognized that the continuing-violations theory still applies to discrete discriminatory acts that are part of a 'longstanding and demonstrable policy of discrimination,' *see Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) ('The second category of continuing violations, involving a longstanding and demonstrable policy of discrimination, is not implicated by *Morgan*.')." *Austion*, 244 F. App'x at 647. This exception does not apply here.

as to whether she was subjected to repeated, severe, and pervasive harassing behavior. A luncheon held in Plaintiff's honor is not the type of conduct that could to be considered to contribute to a harassment suit. The only unpleasant episode that Plaintiff identifies as taking place at that event are passing comments by two employees that were not particularly offensive. Plaintiff has not alleged any other harassing behavior with sufficient specificity to support her claims in this lawsuit.

Defendant is entitled to summary judgment on Plaintiff's retaliatory harassment claim as well.

## V.     CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment will be granted and this action dismissed. An appropriate Order is filed herewith.

_Todd Campbell_
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE